67 N.J. Super. 410 (1960)
170 A.2d 828
WILLIAM REITER, PLAINTIFF-APPELLANT,
v.
MAX MARX COLOR & CHEMICAL CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1960.
Decided September 27, 1960.
*411 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Francis Sorin argued the cause for plaintiff-appellant.
Mr. H. Curtis Meanor argued the cause for defendant-respondent (Messrs. Lamb, Langan & Blake, attorneys; Mr. Arthur J. Blake, of counsel).
The opinion of the court was delivered by PRICE, S.J.A.D.
In a negligence action, tried before a court and jury in the Superior Court, Law Division, plaintiff seeks to reverse a judgment of dismissal entered on defendant's motion at the end of plaintiff's case (R.R. 4:42-2(b)). Plaintiff sought the recovery of damages for personal injuries resulting from a fall from a ladder while working for Max Cohen Plumbing Company (hereinafter called Cohen), in the performance of a contract which Cohen had entered into with defendant to install a "[n]ew four-inch galvanized water pipe to be run from the bottom of water tower to the pipe of the [factory] building" on defendant's property. The record reveals that a wooden water tank, 20 feet in depth, was erected on an iron structure 60 feet above the ground. A coemployee of plaintiff testified that a "feed pipe," which came "out of the tank," was rotted and the contractor "had to replace it with new pipe," and that the pipe went "through the bottom of the tank" and it was necessary to "go into the tank to unscrew it"; it was "part of the job" to do so.
*412 During the course of the work Cohen's foreman directed plaintiff to "see what kind of connection was in the tank." In compliance therewith plaintiff climbed an iron ladder from the ground to the "top of the water tower," removed a "trap door" cover from an opening on the tank roof, and climbed down a stationary wooden ladder, attached to the inside of the tank wall, leading to the bottom of the tank. Plaintiff testified that the ladder "appeared all right" but was "wet" and "slimy" or "soggy." On reaching the bottom of the tank he located "a flange around the pipe holding the pipe from the outside of the tower to the inside." With the aid of lighted matches he completed his inspection and then commenced his ascent of the ladder. When he was "three or four rungs from the top * * * one of the rungs collapsed underneath" his left foot, precipitating him to the tank floor with such force that he was rendered temporarily unconscious and sustained the injuries for which he sought compensation as aforesaid. Plaintiff further testified that, before he was lifted from the tank by a rescue squad, "I felt a piece of the ladder the part that I felt was rotted like a piece of wood you see on the beach. It was all rotted." There was testimony from the coemployee that the ladder was "broken in several pieces" and the wood "rotted."
Attempting to support the trial court's action and the reasoning on which it was based, defendant cites Broecker v. Armstrong Cork Co., 128 N.J.L. 3 (E. & A. 1942); Gibilterra v. Rosemawr Homes, 19 N.J. 166 (1955); Mergel v. Colgate-Palmolive-Peet Co., 41 N.J. Super. 372 (App. Div. 1956); certification denied 22 N.J. 453 (1956). The asserted justification for the dismissal is unsupported by the factual situation revealed by the testimony presented on plaintiff's case.
The aforesaid cases on which defendant relies in support of the trial court's action are authority for the proposition that, where the landowner does not attempt to direct the method in which the work is done, he is under no duty to *413 protect an employee of an independent contractor from the very hazard the contractor was called upon to correct. The principle has no application to the case at bar because, when plaintiff rested his case, it appeared from the evidence that Cohen had not been hired to do any work upon the ladder and that the ladder was merely a means of access to the pipe upon which Cohen and his employees were to work. Cf. Bergquist v. Penterman, 46 N.J. Super. 74, 83 (App. Div. 1957); certification denied 25 N.J. 55 (1957).
Defendant clearly owed the duty to Cohen's employees, including plaintiff, as its invitees on its property, to use ordinary care to render reasonably safe the area to which defendant might reasonably expect Cohen's employees would go. Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 219 (1954). The basic question was whether defendant reasonably should have expected Cohen's employees to use or enter the inside of the tank.
Assaying the trial court's action, we apply the well-settled rule that on a motion for involuntary dismissal the trial court "must accept as true all the evidence that supports the position of the party against whom the motion is made, and it must give him the benefit of all the inferences in his favor that may logically and legitimately be drawn therefrom." O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319, 328 (1953).
So tested, the evidence established prima facie that the use of the ladder was to gain access to the work and not part of it and that the jury would have been justified in finding that defendant knew or should have known that plaintiff would enter the tank. If it resolved those questions in plaintiff's favor, it could then under appropriate instruction from the court consider and resolve the remaining question, likewise within its province, viz: whether the defendant was negligent in the performance of its aforesaid duty.
The judgment in favor of defendant is reversed and a new trial granted. Costs are to abide the result.